Ctjkxa., per Johnson, Ch.
In the consideration of this case, I propose to inquire:
1. Whether the contract entered into between the defendant and his wife, previous to their marriage, was a marriage settlement within the meaning of the act of 1823, the recording of which was necessary to give it validity ?
2. If recording was necessary, was it binding on the parties, though not recorded ?
3. Was the defendant bound to have it recorded, or can he take advantage of its not being recorded.
*322 4. Is the defendant entitled to the whole of the settled estate, or to a distributive share only ?
5. Is the defendant bound to account for the property disposed of in the lifetime of the wife ?
First: The act of 1823 provides that “no marriage settlement shall be valid until recorded in the office of the secretary of State, and in the office of the register of mesne conveyance, in the district where the parties reside ; provided that the parties shall have three months to record the same, and if not recorded within three months, the same shall be null and void.” If in the absence of any definite authoritative rule, I were left to define what was meant by the terms “ marriage settlement,” I should not hesitate to conclude, that it embraced all contracts'founded on the consideration of marriage, whether ante or post nuptial, by which the relative rights of the husband and wife in the property of each other, incident to the marriage, was changed and altered — by which, for example, the husband renounced his title to the choses in action which accrued to the wife, and were reduced to possession during the coverture, or by which the wife renounced her dower in the lands of her husband, or a distributive share in his personal estate in case of his dying intestate. But a distinction is taken between contracts that are executory and those that are executed, and it is true that the writers on this subject employ the terms “ marriage articles,” and'frequently “ marriage contracts,” or “deeds,” 'to designate executory contracts, as distinguished from executed marriage settlements, by which the estate is finally and definitively secured : but when the object and legal effect of all these varieties of contracts arc the same, any one of these designations may be rightfully employed to express all. May not marriage articles be so framed as to express all that the parties intend? Do not the terms marriage contract and deed, import every thing that is meant by settlement? Is there any conceivable reason why all the provisions and legal effect1 of a marriage settlement should not enter into, and appertain to any- of the forms of contract before enumerated, or any other of which it is possible to conceive ? Independently of these considerations, with great deference, it appears to me that this contract is precisely what the argument *323 maintains is necessary to a marriage settlement. It contains no 'provision for further covenants, and the parties looked to it as the final act by which their rights were to be determined, and the very foundation of the complainants claim is in the assumption that it is entitled to have the effect of a settlement. The protection of creditors and purchasers is one of the leading objects of all our registry acts, and in the act of 1785, (P. L. 357,) every “ marriage contract, deed, or settlement,” is required to be recorded within a limited period; and if because marriage articles, terms used to express one variety of marriage contracts, are not embraced in the act, and need not be recorded, who'would ever think of making any other, or subject themselves to the inconvenience of recording, when all the objects could be attained without it, with the advantage of being able to set creditors at defiance.
Second: I have before recited every thing that is contained in the act of 1823, that has any bearing on this question. It consists of a single clause included in an act relating principally to a different subject. What did the legislature mean when they said, that “no marriage settlement should be valid until recorded,” &c.— Did they mean that they should be valid for some purposes and void as to others 1 That they should be valid between the parties and void as to creditors ? . What is there in the .act itself, or in the subject matter, which authorizes the distinction ? Were not the legislature as competent to declare that it should not be valid, until recorded, as well between the parties as between them and strangers ? The statute of frauds provides that contracts for the sale of lands and those founded on the consideration of marriage, to be binding even on the parties, must be in writing and signed by the party to be bound, or his agent: and the legislature have here declared, that no marriage settlement shall be valid until recorded. The recording is, therefore, as indispensable to the consummation of the contract in this case, as writing in the cases under the statute of frauds. There is no contract until these requisitions are complied with. If we were at liberty to speculate upon the intention of the legislature, and to draw our conclusions independently of the plain import of the terms, even then some reasons might be adduced to show that it was intended that they should be void, *324 even between the parties. It may, I think, be doubted whether it would not have been prudent and wise to have declared all contracts which were required to be recorded, void, as well between the parties as to third persons, if they were not recorded within the time prescribed: and who will undertake to prescribe for the legislature ? The numerous evils and many vexatious law suits which have grown out of the neglect to record deeds, is familiar to every one. Notice of the deed to subsequent purchasers and creditors, has been uniformly held sufficient, although not recorded, and the titles to many of the largest estates, both real and personal, have depended, often, on questionable proof of notice. May it not have entered into the contemplation of the legislature, that declaring them void, even as between the parties, unless recorded, might furnish a strong inducement to conform to the law, and thus avoid the evils which I havé stated? Would it not be a wise regulation ? The leading argument opposed to this conclusion, is deduced from the adjudications on the registry acts, in England and in this country, many of which have occurred in this State, by which it is determined that the contracts are binding on the parties, although not recorded, and I concede that they are all the same way, but it will be found that they proceeded on the ground that the statutes did not render recording necessary to the consummation or perfection of the contract, but declared them (as in our act of 1785) void unless recorded, and in the construction of them, it has been uniformly held, that notice supplied the place of recording, even as to strangers, and as the parties must have notice they were therefore bound. Not so here — the act of 1823, expressly declares, that marriage settlements shall not be valid, until recorded. The point was expressly ruled in the case of Austin v. Mullen, which came up to the court of appeals from Spar-tanburg, some years since, but it has not been reported, and the original opinion is not to be found on file in the clerk’s office. I thought it better, therefore, to consider the question open.
3. It is a well settled doctrine of the court of chancery, that if real or personal estate be settled on a married woman, without the intervention of trustees, her interests will, notwithstanding, be protected by the conversion of the husband into a trustee for her— *325 (Bennet v. Davis, 2 P. Wms. 316; Parker v. Brooke, 9 Ves. 583; Rich v. Cockell, ib. 369; Boykin v. Ciples, 2 Hill. Ch. Rep. 203), and he is, of course, clothed with all of the rights, and bound to perform all the duties which that relation imposes. As such, he was entitled to the possession of the marriage contract, and was bound in good faith to have it recorded. I am not prepared to say, that the neglect to do so, in the case of a trustee having no interest in the estate, would charge him with the value of the estate ; but it is too clear to admit of a question, that no one will be permitted to make a profit to himself, by neglecting, whether intentionally or not, to do that which he ought to have done. The defendant claims the estate here, because he did not record the contract.— That cannot be allowed.
Fourth : By the terms of this contract, the defendant covenanted that his intended wife should at all times thereafter, “ have, hold, use, occupy, possess and enjoy, in her own right and to her sole and proper use and behoof, all the estate, real and personal, of what kind soever, of which she may be seized and possessed at the solemnization of the said intended marriage, without any let, or hindrance, claim, title, or demand whatsoever, from the said Wm. Giles,” &c. And hence the question, whether he is entitled to the whole, or any part of the estate. For the complainant, it is insisted that the contract operates as a relinquishment on the part of the defendant, of all interest in the property of his wife, as well during the coverture as after her death, and that it descends to her next of kin, and Read v. Snell, 2 Atk. 642, is relied on as sustaining this position, but the analogy between the cases does not strike me. By the marriage articles in that case, the wife agreed to accept a stipulated sum in bar, or satisfaction, of her dower and thirds, and of all other parts of the real and personal estate of her husband, which she might claim by the common law of England, or the custom of London — (the husband being a freeman of London,) and it is apparent that the interest intended to be released, was that which might accrue to her after his death.— Besides the terms employed, she could have no other, for she had nothing in the husband’s estate, during his life, and it was held that she was not entitled to her paraphernalia. Here, but for the *326 contract, all the wife’s chattels, reduced to possession, would have vested immediately in the husband, and he would have been entitled to the rents and profits of her real estate during the coverture. Here there was a subject on which this covenant might operate, nor is there any expression in it indicating an intention on the part of the defendant, to do more than to secure to his wife, the separate use of her own estate, leaving to the law the disposition of it after her death. On the other hand, it is contended that the contract only suspended the marital rights of the defendant, during the life time of the wife, and that on her death, tire property being in his possession, the whole vested in him jure mariti. I have before observed, that by the marriage, the defendant would have acquired an absolute property, including necessarily, the use and possession, in the personalty of the wife, and an estate in her realty during the coverture, and a distributive share of it after her death. To these, in favor of the wife, he renounced all “ claim, title and demand.” It is not then a mere suspension, but an absolute relinquishment of these rights. His possession of the property was in character of trustee for the wife, and could not restore him to the rights which he had relinquished, or invest him with new— and it is well settled that the marital rights do not attach upon such a possession. — 12 Ves. 501, Baker v. Hall. It was then the separate estate of the wife, without any limitation over, or the power of appointment, and the note to Peyre v. Jervey, 2 Des. Eq. R. 226, furnishes the rule for its disposition. It must be distributed according to the act of 1791; and there being no children, the defendant is entitled to one-half, instead of one-third, as supposed in the circuit court decree. I have not overlooked the case of Stewart v. Stewart, 7 Johns. Ch. R. 246, in which it was held, -that where by the settlement the wife was entitled to make an appointment of her separate estate, and there being no limitation over, she failed to do so, it was held that the husband was entitled to the whole, and that I believe is in accordance with the English decisions. The case of Peyre v. Jervey, before cited, was decided' on precisely that principle; but that has been overruled, and I will not stop to question the correctness of a rule which has been so long and so universally acted on.
*327 Fifth: I ana not instructed, by the court to give any judgment on the question, whether, the defendant is bound to account for the property sold in the lifetime of the wife, and it is thought that it will be better understood when the circumstances under which it was sold, are before the court; and to obtain this information, an order will be made, referring the matter to the commissioner.— The order for a writ of injunction, is therefore affirmed, and it is ordered that the decree of the circuit court, in all other matters, be reformed according to the principles of this decree. And it is further ordered and decreed, that the defendant do account before the commissioner, for all the estate settled, which remained in his possession after the death of his wife ; and that the commissioner do ascertain and report to the circuit court, what portion of the settled estate was sold by the defendant in the lifetime of his wife — with its value — and whether the same was, or was not, sold with her free and voluntary consent.